# EXHIBIT B



**AgaveWeb**
*Case Information and Document List*



## Case Information

| | |
|---|---|
| Case Number: | C20223728 |
| Filing Date: | 9/12/2022 |
| Caption: | NICHOLAS LAGUNA VS. HARBOR FREIGHT TOOLS USA, INC. ET AL. |
| Judge: | CASEY F MCGINLEY |



## Party Information

| Party Full Name | Party Role | Name Type | DOB |
|---|---|---|---|
| NICHOLAS LAGUNA | Plaintiff | True | |
| HARBOR FREIGHT TOOLS USA, INC. | Defendant | True | |
| YUMING INTERNATIONAL, LTD. | Defendant | True | |

ebsite Record Search
rk of Superior Court
ctronic Documents Online



Enter Search Criteria -

OR Bus.

Number C20223728

○ Case Number   ○ Name

Search



Name Search Mini-List?

ebsite Case Search Help

## Case/Document Information

| Document Type | Document SubType | Document Caption | File Date | Image |
|---|---|---|---|---|
| Affidavit | Certificate Of Service | CERTIFICATE OF SERVICE | 12/6/2022 | Available at Courthouse |
| Order | Order | ORDER | 11/29/2022 | Available at Courthouse |
| Motion | Motion To Extend Time/Shorten Time | Plaintiff's Ex Parte Motion For Order Enlarging Time Within Which to Secure Service of Process | 11/29/2022 | Available at Courthouse |
| CourtNotice | Notice Of Impending Dismissal | NOTICE OF IMPENDING DISMISSAL | 11/21/2022 | Available |
| Open | Petition & Complaint | Complaint | 9/12/2022 | Available at Courthouse |
| Misc | Documents/Records Filed | Civil Cover Sheet | 9/12/2022 | Available at Courthouse |
| Arbitration | Fastar Certificate | FASTAR Certificate | 9/12/2022 | Available at Courthouse |
| Summons | Summons/Subpoena | Summons | 9/12/2022 | Available at Courthouse |
| Summons | Summons/Subpoena | Summons | 9/12/2022 | Available at Courthouse |
| Receipt | All Money Receipts | All Money Receipts 3536125 | 9/12/2022 | Available at Courthouse |

# EXHIBIT C

FILED
Gary Harrison
CLERK, SUPERIOR COURT
9/12/2022 1:47:03 PM
BY: JAMES R. ORR /S/
DEPUTY

Case No. C20223728
HON. CASEY F MCGINLEY

**BREWERWOOD, P.L.L.C.**
2398 East Camelback Road, Suite 540
Phoenix, Arizona 85016
(602) 254-9813; Fax: (602) 254-5511 Facsimile
John B. Brewer, #018207, John@brewerwood.com
Dane L. Wood, #016098, Dane@brewerwood.com
*Attorneys for Plaintiffs*

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| NICHOLAS LAGUNA, an unmarried man, | Case No.: |
| Plaintiff, | |
| v. | **C O M P L A I N T** |
| HARBOR FREIGHT TOOLS USA, INC., a Delaware corporation; YUMING INTERNATIONAL, LTD., a Chinese corporation; DOES I through X; ABC PARTNERSHIPS I through X, and; BLACK CORPORATIONS I through X, | (Tort—Non-Motor Vehicle; Strict Product Liability; Negligence; Express Warranty; Implied Warranty) |
| Defendants. | **(TIER 3)** |

Plaintiff, by and through his respective undersigned counsel and for his claims against Defendants, allege as follows:

### SECTION 1
### (Parties, Jurisdiction, and Venue)

1.      Plaintiff NICHOLAS LAGUNA, an unmarried man, is a resident of the State of Arizona in Pima County.

2.      Defendant HARBOR FREIGHT TOOLS USA, INC. (hereinafter "HARBOR FREIGHT") is a corporation formed and organized under the laws of the State of Delaware with its principal place of business in the State of California.

3.     Defendant HARBOR FREIGHT is a privately owned company that owns and operates a chain of more than 1,300 retail stores located throughout the United States and Arizona called "Harbor Freight Tools."  Its retail stores are stocked with shelves that showcase a wide variety of hand tools, power tools, equipment, supplies, and the like that are offered for sale directly to consumers.  Said Defendant also sells its products via e-commerce and a mail-order catalog.

4.     Defendant YUMING INTERNATIONAL, LTD. (hereinafter "YUMING") is a foreign corporation formed and organized under the laws of the Country of China whose headquarters are located at 4F, Noble Center, No. 1006, 3rd Fuzhong Road, Futian District, Shenzen, Guangdong, China.

5.     Defendants DOES I through X, ABC PARTNERSHIPS I through X, and BLACK CORPORATIONS I through X, inclusive, are individuals, corporations, partnerships and/or business entities which caused the events complained of to occur in the State of Arizona.  Plaintiff does not know the true identities of these Defendants and, therefore, sues them by fictitious names.  Plaintiff will amend this Complaint when the names of these Defendants become known.

6.     At all times mentioned herein, Defendants, and each of them, were the agents, servants, joint venturers and/or employees of the remaining co-defendants, and each was at all times acting within the course and scope of said agency, service, joint venture and/or employment. All Defendants were either joint tortfeasors with above Defendants and/or are concurrently and/or jointly and severally liable for the acts and omissions herein described, and/or are otherwise secondarily liable for said acts and omissions.

7.     The careless, reckless, negligent acts, omissions, misfeasance and nonfeasance carried out by each and every employee and/or agent of each and every corporation or business of Defendants were authorized, ordered and directed by the respective Defendant's corporate or business employees, officers, directors and/or managing agents.  Each Defendant's employees, officers, directors and/or managing agents had advance knowledge of, authorized and/or participated in the herein described acts, conduct, misfeasance and nonfeasance of their employees, agents and each of them.  In addition thereto, upon completion of the aforesaid acts, conduct, misfeasance and nonfeasance of the employees and agents, Defendants ratified, accepted the benefits of, condoned and/or approved of each and all of the said acts, conduct or nonfeasance. Furthermore, at all times herein relevant, each Defendant was a principal, master, employer and joint venturer of each and every other Defendant and was acting within the course and scope of said agency, authority, employment and/or joint venture.

8.     Defendants, and each of them, caused the events complained of herein to occur in the County of Pima, State of Arizona.  Defendants, and each of them, have purposefully directed their activities to the State of Arizona.  Furthermore, Defendants, and each of them, are duly authorized to do business in the State of Arizona and have conducted business throughout the State of Arizona on a systematic and continuous basis.  Venue is proper in Pima County because the events described herein all occurred in Pima County and Coconino County.

9.     Defendants, and each of them, have substantial contacts with the State of Arizona such that maintenance of a lawsuit is reasonable and does not offend traditional notions of fair play and substantial justice.  Defendants have purposefully availed themselves of conducting

3

activities in the State of Arizona.  Defendants have fostered numerous relationships in Arizona so that Arizona residents will continue to buy their products.

10.     There is no inherent unfairness in having Defendants litigate in the State of Arizona. Defendant HARBOR FREIGHT has, for many years, done substantial business throughout the State of Arizona.  And, upon information and belief, Defendant YUMING has done substantial business in the State of Arizona.  Defendants can reasonably be expected to be haled into Arizona courts.

11.     Defendants, and each of them, have done business in Arizona with the deliberate and specific intent to penetrate the Arizona market and obtain the sale and distribution of product into every American state, including into Arizona.

12.     There has been a regular and systematic flow of Defendants' products into the State of Arizona.

13.     There was a regular, deliberate, and systematic course of sales of Defendants' products into the State of Arizona.

14.     Upon information and belief, Defendants utilize express agents, apparent agents, and/or ostensible agents on behalf of their behalf throughout the United States and State of Arizona.

15.     The selling and distribution arrangements between Defendants and their sellers, brokers, and dealerships for sales in Arizona were not an isolated transaction but were part of an ongoing, systematic, intentional, and substantial business relationship.

16.     The products manufactured and sold by Defendants reached Arizona systematically and deliberately, not fortuitously, as part of an intentional, systematic, continuing stream of commerce carefully designed and directed for use in Arizona.

17.     Defendants clearly intended to serve the market with their products throughout America, including in Arizona.

18.     The distribution and sale of the product at issue in this lawsuit was not simply an isolated occurrence, but arose from the intentional and deliberate efforts of Defendants and its sellers, brokers, and dealerships to serve, directly or indirectly, the market for its product in Arizona.

19.     The damages sought in this products liability action exceed $300,000.00, qualifying this action for assignment of **"Tier 3" procedures** as specified by Rule 26.2(c)(3)(C), *Arizona Rules of Civil Procedure*, including amounts sought, if applicable, for punitive damages, interest, attorneys' fees and costs.

20.     The amount in controversy exceeds the minimum jurisdictional limits of this Court.

21.     Plaintiff hereby demands a trial by jury of all issues pursuant to Rule 38, *Arizona Rules of Civil Procedure*.

**SECTION 2**
**(Facts Common To All Counts)**

22.     Plaintiff re-alleges and incorporates by reference all prior and subsequent allegations as though fully set forth in this pleading.

23.     On September 14, 2020 at or near 4:00 p.m. (MST), Plaintiff NICHOLAS LAGUNA was seriously and permanently injured while using a brand new "Haul-Master" step stool he purchased the day before at a Harbor Freight Tools retail store in Tucson, Arizona.  As Plaintiff stepped onto the step stool, it unexpectedly broke and collapsed due to a failed rivet that caused a leg support brace to detach.  Prior to the accident, Plaintiff had placed the step stool in a secure, stable position as a means to step up onto and down from his enclosed utility trailer while he was camping in the wilderness in Coconino County.  The step stool was placed beside the door of his trailer upon a rubber mat that was set on level ground.  As Plaintiff was stepping down approximately six (6) inches from his trailer onto the step stool, the step stool unexpectedly failed and collapsed causing him to fall rearward and strike his head against the trailer in a violent manner resulting in loss of consciousness and serious injuries to his head and body.  At all times, Plaintiff was using the step stool in a foreseeable manner.  At all times, Plaintiff was exercising reasonable care and caution for his own safety.  (The events of this paragraph will be identified throughout this Complaint as the "**Subject Accident**.")

24.     The step stool involved in the Subject Accident was purchased by Plaintiff on September 13, 2020 at the Harbor Freight Tools retail store located at 5570 E. 22nd Street, Tucson, Arizona 85711, situated in Pima County.  The listed price of the step stool was $23.99 (plus tax), but Plaintiff also presented a 20% discount coupon saving him $6.00.  According to the original retail box/packaging, the step stool Plaintiff purchased, which was involved in the Subject Accident, was a "Haul-Master" brand "Step Stool Working Platform" (Item # 62515), as displayed on its original packaging box depicted in Figure 1 below.  (Throughout this Complaint, the step stool involved in the Subject Accident will be referred to as the **"Subject Step Stool."**)

1
2
3
4
5
6
7
8
9
10
11
12
13



FIGURE 1

14   25.    The Subject Step Stool is an anodized aluminum assembly with a stated capacity of

15
16   350 pounds.  Plaintiff weighed approximately 200 pounds, which was well within the step stool's

17   rated weight capacity.

18   26.    According to an on-product placard, the Subject Step Stool was manufactured in

19
20   July of 2020.

21   27.    The general construction of the Subject Step Stool consists of three aluminum 3-1/2

22   inch x 1-3/4 inch (.032 thick) C-channel sections pop-riveted to preformed .032 thick aluminum

23
24   channels at each end.  The four legs are 1-¾ inch x 1 inch aluminum C-channels mounted to the

25   main frame via steel hinges and secured in the extended position by two locking mechanisms.

26   The leg frame structure on each end consists of two aluminum C-Channel legs fastened at the top

27
28   to a trapezoidal aluminum tube and steel hinge mechanisms.  A plastic cap is riveted to the free

7

end of each leg.  The legs are further supported by a steel brace extending diagonally from the trapezoidal support tube to the leg.   The steel leg braces are secured to the trapezoidal tube and to each leg with aluminum pop rivets.  The stated dimensions of the Subject Step Stool in the unfolded condition are 26 ½ inches (length) by 13 ½ inches (width) by 13 5/16 inches (height) with a working platform area of 18 inches (length) by 11 7/8 inches (width).

28.    According to the original box/packaging, the Subject Step Stool was "Distributed by Harbor Freight Tools, Camarillo, CA" and was "Made in China."

29.    Among its many products and product lines, Defendant HARBOR FREIGHT advertises and sells a variety of tools and products under the in-house brand name known as "Haul-Master."  The Subject Step Stool is branded and labeled as a "Haul-Master."  The "Haul-Master" brand is registered as a trademark with the United States Patent and Trademark Office, registration No. 3982428.  Defendant HARBOR FREIGHT is the registered owner of the "Haul-Master" trademark.   The "Haul-Master" brand name is exclusive to Defendant HARBOR FREIGHT sold only in its retail stores, its catalog, and its website.

30.    Upon information and belief, products along with their packaging that are marked and labeled with the "Haul-Master" name and logo are sourced by Defendant HARBOR FREIGHT from outside manufacturers according to HARBOR FREIGHT's specifications and then tested by HARBOR FREIGHT.  Upon further information and belief, Defendant HARBOR FREIGHT solely chooses and selects the type of products it desires to contain the "Haul-Master" brand and then said Defendant locates, and seeks bids from manufacturers that are in the business of manufacturing the particular product desired by Defendant.   Thus, for example as a hypothetical, a wheel barrow that contains the "Haul-Master" brand might be manufactured by a

8

different manufacturer than a ladder that also contains the "Haul-Master" brand. Regardless of the product, Plaintiffs are informed and believe that Defendant HARBOR FREIGHT dictates the specifications for all products containing the "Haul-Master" brand, including the dimensions, design, materials, weight, size, colors, performance, and labeling. Notwithstanding, Defendant has the final authority to review and test the finished product, and dictates changes, for all products containing the "Haul-Master" brand.

31.    Plaintiff is informed and believes that Defendant HARBOR FREIGHT, and only said Defendant, desired to have a step stool/working platform included in its "Haul-Master" brand product line. Thereafter, Defendant HARBOR FREIGHT sought price bids from outside manufacturers in China and other countries with cheap labor forces and substandard, slipshod manufacturing practices to manufacture a cheaply made step stool/working platform that HARBOR FREIGHT could sell in high volumes with a high profit margin. Once Defendant HARBOR FREIGHT selected a manufacturer in China with the lowest bid who would build a cheaply made step stool/working platform that met HARBOR FREIGHT's specifications and price demands, Defendant HARBOR FREIGHT entered into a contract with said manufacturer to manufacture the step stool/work platforms in a high volume to maximize the lowest possible price per unit.

32.    The Subject Step Stool was manufactured by Defendant YUMING to the specifications, demands, review process, and testing of Defendant HARBOR FREIGHT. Defendant HARBOR FREIGHT entered into a contractual relationship with Defendant YUMING to manufacture the Subject Step Stool for the financial benefit of Defendant HARBOR FREIGHT

to market and sell the product, at maximum profit, in Arizona and throughout the nation in over 1,300 retail outlets, mail-order catalog, and online.

33.     Upon information and belief, the Subject Step Stool model has been discontinued by Defendant HARBOR FREIGHT.

34.     Upon information and belief, prior to the Subject Accident, Defendants were well aware that it was reasonably foreseeable, and further, Defendants had actual knowledge from other lawsuits, claims, and consumer reviews and feedback, that the Subject Step Stool model was used by consumers as a step up onto and step down from trailers, recreational trailers, and vehicles in fields, dirt lots, campgrounds, wilderness, construction sites, and other surfaces. Moreover, the same step stool model is sold by HARBOR FREIGHT'S affiliated company, Central Purchasing, LLC., through online retailers such as Amazon, Sears, and others.  One public review on Amazon in May of 2015 states: "Height is right for application as a step into our RV or for sitting while working in garden."  Another public review on Amazon in February of 2016 states: "We got it for work in the yard and around the house."  Another public review on Amazon in April of 2014 states: "I purchased this to use as both a step stool and a garden seat. My yard is landscaped with rocks and I garden in containers. I was having trouble finding a stool that was both stable to sit on and high enough to comfortably work in my garden."

35.     As a result of the Subject Accident, caused by the fault of Defendants, and each of them, as described below, Plaintiff NICHOLAS LAGUNA sustained serious and permanent physical injuries requiring hospitalization and treatment, emotional injuries, pain and suffering that is ongoing, and loss of past and future income.

**SECTION 3**
**Count One – Strict Product Liability**
**(All Defendants)**

36.     Plaintiff re-alleges and incorporates by reference all prior and subsequent allegations as though fully set forth in this pleading.

37.     The Subject Step Stool was in a defective condition unreasonably dangerous to users directly and proximately causing the injuries and damages sustained by Plaintiff.

38.     The Subject Step Stool was developed, designed, configured, engineered, fabricated, assembled, built, manufactured, produced, labeled, tested, marketed, promoted, advertised, imported, distributed, delivered, and sold by Defendants, and each of them.

39.     As a result of the acts of Defendants, and each of them, the Subject Step Stool was in a defective condition unreasonably dangerous to foreseeable users under foreseeable conditions.  A direct and proximate cause of the Plaintiff's injuries was the Subject Step Stool's unsafe, defective, and unreasonably dangerous flaws in design, manufacturing, and warning that violated the expectations of a reasonable consumer and violated industry standards.

40.     The Subject Step Stool was in a defective condition unreasonably dangerous to consumers in that during ordinary usage under foreseeable conditions, the product had the propensity to fail due to substandard rivet installation practices, substandard manufacturing processes, substandard quality control, substandard inspection/testing practices, and poor design, all of which were unknown to the average consumer, including Plaintiff.

41.     In addition, the Subject Step Stool was defective and unreasonably dangerous because it failed to contain, among other things, reasonable fail-safe devices and meaningful instructions and warnings.

11

42.     The defective and unreasonably dangerous conditions existed due to faulty, flawed, and unsafe design, inferior and inadequate materials and parts, slipshod workmanship and manufacturing processes, departure from intended design, a design that was below the state-of-the-art, lack of warnings, lack of instruction to users, and lack of fail-safe devices and mechanisms.

43.     Defendants defectively designed, configured, engineered, fabricated, assembled, built, manufactured, produced, labeled, tested, marketed, promoted, advertised, imported, distributed, delivered, and sold the Subject Step Stool, thereby placing it in the stream of commerce in a defective, unsafe, and unreasonably dangerous condition.

44.     The defects in the Subject Step Stool were beyond the contemplation and expectations of a reasonable person.  The defective and unreasonably dangerous conditions were not observable by Plaintiff who, lacking the technical knowledge and skill required to disassemble and examine the product and/or understand its engineering and design, relied upon the duty of Defendants, and each of them, to produce a safe and sturdy product.  Furthermore, the dangers far outweighed the purported utility in the design of the product.

45.     Defendants, and each of them, failed to design, configure, engineer, fabricate, assemble, build, manufacture, produce, label, test, market, promote, advertise, import, distribute, deliver, and sell the Subject Step Stool in a reasonably safe condition which conformed to and was in compliance with industry and other safety standards.

46.     Prior to the failure of the Subject Step Stool, Plaintiff was totally unaware that this product was in a defective condition unreasonably dangerous to consumers.  Defendants, and each of them, failed to warn Plaintiff about the foreseeable dangers associated with this product.

47.     Due to the Subject Step Stool's defective and unreasonably dangerous design, manufacture, and lack of warning, the product was extremely dangerous to Plaintiff, who was totally unaware of the dangers, hazards, and perils of the product.  Defendants, and each of them, owed a non-delegable duty and obligation for the integrity and safety of the product.  Defendants, and each of them, breached their duty and obligation.

48.     At the time the Subject Step Stool was produced, there were reasonable alternative designs, manufacturing processes, labels, and warnings that would have eliminated the risk of injury.  Alternatives were feasible and cost effective in terms of the product's manufacturing, longevity, assembly, maintenance, aesthetics, and range of consumer choice among products.  The magnitude and probability of foreseeable risks of harm were far too great and serious for Defendants to disregard the use of alternatives.  Furthermore, the failure to use alternatives violated consumer expectations about the advertising and public image that Defendant HARBOR FREIGHT portrays about its reputation for quality and safety.  The omission of alternative designs, manufacturing processes, and warnings rendered the Subject Step Stool into a product not reasonably safe.

49.     As a direct and proximate result of the Defendants' unreasonably dangerous and defective product containing at a minimum, design, manufacturing, and/or warning defects, the Subject Step Stool did not perform as safely and did not provide reasonably adequate protection from injury as an ordinary consumer would expect when using said product in a reasonably foreseeable manner.

50.     The lack of safe design, manufacture, and warning of Subject Step Stool caused Plaintiff's injuries because the product was defective and unreasonably dangerous when used in a

reasonably foreseeable manner and because Defendants failed to warn, instruct, or protect against the dangers or hazards in the use of those instrumentalities and failed to provide proper instructions and warnings for the use of those instrumentalities.

51.     On the date of the Subject Accident, the Subject Step Stool was being used in a reasonably foreseeable manner as such products would be used.  Furthermore, the Subject Step Stool was in the substantially same condition at the time of the accident as it was at the time of Defendants' manufacture, assembly, construction, testing, distribution, marketing, advertising, and sale.

52.     Defendants are strictly liable to Plaintiff for damages caused by the defective and unreasonably dangerous condition of the Subject Step Stool, which lacked safe and protective designs, equipment, and devices, which was manufactured according to substandard practices, which lacked safe and protective warnings, and which also failed to provide for reasonably safe usage under foreseeable conditions.

53.     As a direct and proximate result of the defective and unreasonably dangerous product manufactured, distributed, and sold by Defendants, Plaintiff was seriously and permanently injured and he sustained compensatory damages, and will sustain future damages, all as set forth below and incorporated herein.  Furthermore, all allegations for punitive and exemplary damages are equally applicable to this claim, and incorporated herein.

**SECTION 4**
**Count Two – Negligence**
**(All Defendants)**

54.     Plaintiff re-alleges and incorporates by reference all prior and subsequent allegations as though fully set forth in this pleading.

55.     Defendants, and each of them, were negligent in designing, configuring, engineering, fabricating, assembling, building, manufacturing, producing, labeling, testing, marketing, promoting, advertising, importing, distributing, and selling the Subject Step Stool. Further, Defendants were negligent in failing to provide a sound and safely designed product to reasonably foreseeable users.  Defendants knew, or in the exercise of reasonable care, should have known that the Subject Step Stool, including the parts thereof, would not and could not effectively protect and provide safe operation under foreseeable operating conditions and circumstances. Further, Defendants, and each of them, failed to warn users. As a direct and proximate cause of the negligence of Defendants, and each of them, Plaintiff sustained injuries and damages described herein.

56.     The negligence of Defendants, and each of them, included but was not limited to the following acts or omissions:

(a)     Negligently failing to develop and incorporate a proper design in the construction, assembly, and manufacture of the Subject Step Stool.

(b)     Negligently using improper materials which were inferior, unsafe, and unsuitable, and which were mechanically, physically, and structurally defective.

(c)     Negligently failing to properly inspect and test the Subject Step Stool for defects.

(d)     Negligently failing to design, assemble, construct, and incorporate reasonably safe and appropriate safety features, mechanisms, and devices to prevent injuries caused by the propensity of the product to fail under normal usage.

(e)     Negligently failing to provide safe, reliable, and dependable features, mechanisms, and devices to provide the protection from serious injury which an ordinary user

would reasonably expect.

(f)     Negligently failing to produce a product which complied with national safety standards and industry custom and practices.

(g)     Negligently failing to retrofit and recall the Subject Step Stool, modify its design, and failing to provide post-sale warnings and safety bulletins to product owners, distributors, sellers, and foreseeable users.

(h)     Negligently failing to properly label the Subject Step Stool for danger and failing to place adequate warnings on the product.

(i)     Negligently failing to produce a product free of slipshod workmanship, design, and manufacturing processes.

(j)     Negligently failing to produce a product that was free of mismatch in materials and parts that had the capacity and likelihood to cause serious injury.

(k)     Negligently failing to produce a product that was of safe design and conformed to the state-of-the-art.

(l)     Negligently failing to produce a step stool/work platform with safe and proper assembly and rivet installation.

(m)     Negligently placing the Subject Step Stool in a defective and unreasonably dangerous condition, into the stream of commerce.

57.     As a direct and proximate result of the reckless, negligent, callous, and outrageous acts and omissions of Defendants, and each of them, Plaintiff was seriously and permanently injured and he sustained compensatory damages, and will sustain future damages, all as set forth below and incorporated herein.  Furthermore, all allegations for punitive and exemplary damages

are equally applicable to this claim, and incorporated herein.

**SECTION 5**
**Count Three – Breach of Express Warranty**
**(All Defendants)**

58.     Plaintiff re-alleges and incorporates by reference all previous and subsequent allegations as though fully set forth herein.

59.     Defendants, and each of them, are and were at all relevant times herein a merchant as defined by the Uniform Commercial Code ("UCC").

60.     Upon information and belief, Defendants warranted that the Subject Step Stool sold to Plaintiff in 2020 to be free of defects in material and workmanship, and Defendants agreed to repair or replace any defective conditions or defective components during the warranty period.

61.     In addition, upon information and belief, Defendants, and each of them, affirmatively represented and promised that the Subject Step Stool sold to Plaintiff in 2020 would be fully operational, safe, and reliable.  Plaintiff is further informed and believes that these warranties were also made in advertisements and by representatives of Defendants.  The representations and promises were express warranties, and were part of the basis of the bargain between the parties.

62.     These express warranties were breached because the Subject Step Stool sold to Plaintiff in 2020 was not free of defects and was not fully operational, safe, or reliable. Defendants sold the Subject Step Stool to Plaintiff in a defective and unreasonably dangerous condition, and failed to make repairs and implement reasonable safety recalls necessary to eliminate the defects and make the product safe for its intended and reasonably foreseeable use and operation.

63.     As a direct and proximate result of Defendants' breaches of express warranty, Plaintiff was seriously and permanently injured and he sustained compensatory damages, and will sustain future damages, all as set forth below and incorporated herein.   Furthermore, all allegations for punitive and exemplary damages are equally applicable to this claim, and incorporated herein.

## SECTION 6
## Count Four – Breach of Implied Warranty
## (All Defendants)

64.     Plaintiff re-alleges and incorporates by reference all previous and subsequent allegations as though fully set forth herein.

65.     The implied warranties of merchantability arose from the sale of the Subject Step Stool to Plaintiff in 2020, and were not properly excluded or modified.

66.     The Subject Step Stool sold to Plaintiffs in 2020 violated the implied warranties of merchantability and fitness for a particular purpose, because the product was not safe or fit for its intended and reasonably foreseeable use and contained defects that caused the serious and permanent injuries to Plaintiff.

67.     Plaintiff was unaware of the defects in the Subject Step Stool and could not reasonably have discovered them when he purchased the product.

68.     As a direct and proximate result of Defendants' breaches of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff was seriously and permanently injured and he sustained compensatory damages, and will sustain future damages, all as set forth below and incorporated herein.  Furthermore, all allegations for punitive and exemplary damages are equally applicable to this claim, and incorporated herein.

18

## SECTION 7
## (Punitive & Exemplary Damages)

69.     Plaintiff re-alleges and incorporates by reference all prior and subsequent allegations as though fully set forth in this pleading.

70.     Plaintiff alleges that Defendants' acts were carried out with an "evil mind" in that Defendants actually knew that their dangerously defective product and outrageous conduct created a substantial risk of serious harm. Defendants' egregious, willful, and outrageous conduct constitutes serious and conscious disregard for the life and limb of Plaintiff in that Defendants knew of the probable consequences of their reckless acts and dangerously defective product. Defendants knew that the subject product was cheaply made in China according to substandard and slipshod manufacturing processes, lack of meaningful and reliable inspections, lack of meaningful and reliable testing, and utter lack of quality assurance controls.

71.     Additionally, Defendants acted to serve their own interests, having reason to know and consciously disregarding a substantial risk that their outrageous conduct and dangerously defective product and slipshod manufacturing processes would cause significant harm.  Further, Defendants consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others. Defendants' tortious misconduct was clearly and convincingly outrageous, oppressive, and committed with "evil mind" such that these Defendants deserve to be punished in a substantial, meaningful way in order to deter these Defendants from committing future misconduct, deter other companies from committing similar misconduct, to make an example out of these Defendants, and to send a message to these Defendants and the industry as a whole expressing society's detestation and condemnation of such reprehensible misconduct.

Accordingly, Plaintiff is entitled to and demands exemplary and punitive damages against Defendants, and each of them, in a sum that is reasonable and just in the premises.

**SECTION 8**
**(Compensatory Damages)**

72.     Plaintiff re-alleges and incorporates by reference all prior and subsequent allegations as though fully set forth in this pleading.

73.     As a direct and proximate result of the Subject Accident caused by the fault of Defendants, and each of them, Plaintiff sustained serious and permanent injuries.  Plaintiff sustained serious, painful, lasting, disfiguring, permanent, and disabling injuries accompanied by disfigurement and tremendous shock to his nervous system.  Plaintiff has suffered and will continue to endure and experience tremendous physical and mental pain and suffering and loss of enjoyment of activities for an indefinite period of time in the future.

74.     As a further direct and proximate result of the Subject Accident caused by the fault of Defendants, and each of them, Plaintiff has been required to make numerous and diverse expenditures for medical care and medical treatment and he will continue to incur expenses for future medical care and medical treatment.

75.     As a further direct and proximate result of the Subject Accident caused by the fault of Defendants, and each of them, Plaintiff has sustained loss of income, property damage, and other economic losses.  Plaintiff has also sustained loss of earnings and income, he will sustain future loss of earnings and income, and his earning capacity is permanently impaired.

## SECTION 9
### (Prayer for Relief)

76.   Plaintiff re-alleges and incorporates by reference all prior and subsequent allegations as though fully set forth in this pleading.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

A.   For a sum that is reasonable and just for Plaintiff's past, present, and future pain, suffering, disfigurement, and loss of enjoyment of life's activities.

B.   For general compensatory damages in a just and reasonable amount.

C.   For the reasonable value of the special damages incurred to date and those to be incurred in the future for Plaintiff's necessary medical attention and care.

D.   For the reasonable value of Plaintiff's past, present, and future economic losses, loss of earnings and income, and property damage.

E.   For a reasonable award of punitive and exemplary damages against Defendants.

F.   For Plaintiffs' costs incurred herein.

G.   For reasonable attorney's fees on the Express and Implied Warranty claims.

H.   For such other and further relief as the Court and jury may deem just and proper in the premises.

**DATED** this 12th day of September, 2022.

**BREWERWOOD, PLLC**

By ___/s/ Dane L. Wood_____
        John B. Brewer
        Dane L. Wood
        2398 E. Camelback Rd., Ste. 540
        Phoenix, AZ 85016
        *Attorneys for Plaintiff*

#53967

# EXHIBIT D

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

Client Matter    Laguna
Account          # 0313
Invoice          # 54047
Liddy            # 418877-1



FILED
22 DEC -6 PM 3:30

S. CASTILLO DEPUTY

Jennifer Thompson

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF PIMA

NICHOLAS LAGUNA,

|  |  |
|---|---|
| **Plaintiff(s) / Petitioner(s),** | **CERTIFICATE OF SERVICE**<br>**BY PRIVATE PROCESS SERVER** |
| vs | **Case No. C20223728** |
| HARBOR FREIGHT TOOLS USA, INC., et al., | |
| **Defendant(s) / Respondent(s).** | |

**ENTITY/PERSON TO BE SERVED:** Harbor Freight Tools USA, Inc. c/o Corporate Creations Network Inc., Statutory Agent

**PLACE OF SERVICE:**          3620 N. Hayden Rd., #210, Scottsdale, AZ, 85251

**DATE OF SERVICE:** On the ___29th___ day of __November__ , _2022_ at __12:39__ __PM__          County __Maricopa__

☐ PERSONAL SERVICE  ☒ Left a copy with a person authorized to accept service.  ☐ At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein.

**Name of Person Served and Relationship/Title**          Served on Corporate Creations Network Inc, Statutory Agent Christy Garrett,

Customer Service Representative.

on ___11/28/2022___ we received the following documents for service:

Summons | Complaint | and Rule 102a Fastar Certificate

Received from BREWERWOOD, PLLC, ( DANE L. WOOD #016098 )

PROCESS SERVER: Corey W. Davis, #8362

The undersigned states: That I am a certified private process server in the county of Maricopa and am an Officer of the Court.

SIGNATURE OF PROCESS SERVER: _____          Date: 11/30/2022

| Item | Amount |
|---|---|
| Service of Process | $20.00 |
| Mileage | $42.00 |
| Copies | $6.25 |
| Doc. Prep Fee | $10.00 |

**Tax ID#** 90-0533870
I declare under penalty of perjury that the foregoing is true and correct and was executed on this date.

Total          $78.25

# EXHIBIT E

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Suite 540
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)254-9813
E-Mail Address: dane@brewerwood.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF PIMA

Nicholas Laguna
Plaintiff(s),                                     Case No.  C20223728
v.
Harbor Freight Tools USA, Inc., et              **SUMMONS**
al.
Defendant(s).                                    HON. CASEY F MCGINLEY

To: Harbor Freight Tools USA, Inc.

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, 110 West Congress
    Street, Tucson, Arizona 85701 or electronically file your Answer through one of Arizona's
    approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  PIMA



SIGNED AND SEALED This Date: 9/12/2022

Gary Harrison
Clerk of the Superior Court

By:   JAMES R. ORR /s/
_____
Deputy Clerk

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Suite 540
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)254-9813
E-Mail Address: dane@brewerwood.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| Nicholas Laguna<br>Plaintiff(s),<br>v.<br>Harbor Freight Tools USA, Inc., et al.<br>Defendant(s). | Case No.  C20223728<br><br>**SUMMONS**<br>HON. CASEY F MCGINLEY |

To: Yuming International, Ltd.

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 110 West Congress Street, Tucson, Arizona 85701 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  PIMA



SIGNED AND SEALED This Date: 9/12/2022

Gary Harrison
Clerk of the Superior Court

By:   JAMES R. ORR /s/
_____
Deputy Clerk

AZturboCourt.gov Form Set #7189474

2

PERSON/ATTORNEY FILING: Dane L Wood
MAILING ADDRESS: 2398 E. Camelback Rd. Suite 540
CITY, STATE, ZIP CODE: Phoenix, AZ 85016
PHONE NUMBER: (602)254-9813
E-MAIL ADDRESS: dane@brewerwood.com
[ ☐ ] REPRESENTING SELF, WITHOUT AN ATTORNEY
(IF ATTORNEY) STATE BAR NUMBER: 016098, Issuing State: AZ

FILED
Gary Harrison
CLERK, SUPERIOR COURT
9/12/2022 1:47:03 PM
BY: JAMES R. ORR /S/
DEPUTY

Case No. C20223728
HON. CASEY F MCGINLEY

### ARIZONA SUPERIOR COURT, PIMA COUNTY

Nicholas Laguna
Plaintiff(s),

V.

Harbor Freight Tools USA, Inc.. et al.
Defendant(s).

**CASE NO**: _____

**RULE 102a FASTAR CERTIFICATE**

The undersigned certifies that he or she knows the eligibility criteria set by FASTAR Rule 101b and certifies that this case:

## (NOTE – YOU MUST CHECK ONE OF THE BOXES BELOW OR THE CLERK WILL NOT ACCEPT THIS FORM.)

☐ **DOES** meet the eligibility criteria established by Rule 101b; or

☒ **DOES NOT** meet the eligibility criteria established by Rule 101b.

Dated: _____

Dane L Wood /s/ _____
SIGNATURE

NOV 2 9 2022

FILED
Gary Harrison
CLERK, SUPERIOR COURT
9/12/2022 1:47:03 PM
BY: JAMES R. ORR /S/
DEPUTY

# In the Superior Court of the State of Arizona
# In and For the County of Pima

Case No. C20223728
HON. CASEY F MCGINLEY

**Plaintiff's Attorneys:**

Dane L Wood - Primary Attorney
Bar Number: 016098, issuing State: AZ
Law Firm: BrewerWood, P.L.L.C.
2398 E. Camelback Rd. Suite 540
Phoenix, AZ 85016
Telephone Number: (602)254-9813
Email address: dane@brewerwood.com

John B Brewer
Bar Number: 018207, issuing State: AZ
Law Firm: BrewerWood, P.L.L.C.
Telephone Number: (602)254-9813

**Plaintiff:**

Nicholas Laguna

**Defendants:**

Harbor Freight Tools USA, Inc.
26541 Agoura Rd
Calabasas, CA 91302

Yuming International, Ltd.
4F, Noble Center, No. 1006 3rd Fuzhong Road, Futian Distr
Shenzen, Guangdong, CHINA

Discovery Tier t3

Case Category: Tort Non-Motor Vehicle
Case Subcategory: Negligence

AZTurboCourt.gov Form Set #7189474



FILED
GARY L. HARRISON
CLERK, SUPERIOR COURT

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

22 NOV 21 PM 12: 23

**IN AND FOR THE COUNTY OF PIMA**

NICHOLAS LAGUNA VS. HARBOR FREIGHT TOOLS USA, INC. ET AL.

S. CASTILLO, DEPUTY

Case:    C20223728
Date:    11/18/2022

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### NOTICE RE: IMPENDING DISMISSAL

It appearing that service of summons and complaint has not been made upon the defendant(s) listed below,

YOU ARE HEREBY NOTIFIED THAT the action will be dismissed without prejudice AS TO THE DEFENDANT(S) LISTED BELOW without further notice after 30 days from the date of this notice, unless good cause is shown why service was not made within the time limits established by Rule 4, Arizona Rules of Civil Procedure, and that additional time should be granted within which to accomplish service.

If you have reason to believe this notice has been issued in error please call **Case Management Services, Dismissal Desk, at 520-724-3551.**

BY:  Stephanie  Canez
         Case Management Services

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| PLAINTIFF | **VS** | DEFENDANT |
|---|---|---|
| LAGUNA, NICHOLAS | | HARBOR FREIGHT TOOLS USA, INC.<br>YUMING INTERNATIONAL, LTD. |

cc:   DANE L. WOOD, ESQ.
       JOHN B. BREWER, ESQ.

FILED
Gary Harrison
CLERK, SUPERIOR COURT
11/29/2022 11:45:29 AM
BY: ALAN WALKER /S/
DEPUTY

Case No. C20223728
HON. CASEY F MCGINLEY

**BREWERWOOD, P.L.L.C.**
2398 East Camelback Road, Suite 540
Phoenix, Arizona 85016
(602) 254-9813; Fax: (602) 254-5511 Facsimile
John B. Brewer, #018207, John@brewerwood.com
Dane L. Wood, #016098, Dane@brewerwood.com
*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| NICHOLAS LAGUNA, an unmarried man, | **Case No.: C20223728** |
| Plaintiff, | |
| v. | **PLAINTIFF'S *EX PARTE* MOTION FOR ORDER ENLARGING TIME WITHIN WHICH TO SECURE SERVICE OF PROCESS UPON FOREIGN DEFENDANT** |
| HARBOR FREIGHT TOOLS USA, INC., a Delaware corporation; YUMING INTERNATIONAL, LTD., a Chinese corporation; DOES I through X; ABC PARTNERSHIPS I through X, and; BLACK CORPORATIONS I through X, | (Assigned to The Honorable Casey F. McGinley) |
| Defendants. | |

Plaintiff, by and through undersigned counsel, in accordance with Rules 4.2(i), 4.2(k), and 6(b), Ariz.R.Civ.P., hereby respectfully requests an Order granting the enlargement of time within which to secure service of process upon foreign Defendant (located in China) under the provisions of the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents* (hereinafter "Hague Service Convention") and/or other alternative means that are reasonably calculated to place the foreign Defendant on notice of the lawsuit.

Plaintiff is seeking the enlargement of time to serve the following foreign Defendant **only**: YUMING INTERNATIONAL, LTD.

1

This motion does not apply to any other Defendant.

While the Arizona Rules of Civil Procedure do not prescribe a time limit or deadline for serving a foreign Defendant, Plaintiff nevertheless seeks this Order out of an abundance of caution to anticipatively avoid any confusion in the record and/or the inadvertent dismissal of the above-identified foreign Defendant.

This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    RELEVANT FACTS FOR THIS MOTION

This is a personal injury action.  Plaintiff has claims sounding in strict product liability and negligence.  Plaintiff sustained serious head/concussive injuries on September 14, 2020 when a step stool unexpectedly broke and collapsed due to a failed rivet that caused a leg support brace to detach.  It is alleged that Defendant YUMING INTERNATIONAL, LTD. manufactured the step stool for and on behalf of Defendant HARBOR FREIGHT TOOLS USA, INC. to then sell to consumers in the United States.  Defendant YUMING INTERNATIONAL, LTD. is located in Shenzhen, China.  This lawsuit was filed on September 12, 2022.

## II.    LEGAL ANALYSIS

Under the Arizona Rules of Civil Procedure, there is no time limit or deadline to serve a foreign Defendant.  The conventional time to serve a domestic corporation or individual is 90 days, as set forth in Rule 4(i), Ariz.R.Civ.P.  However, Rule 4(i) expressly provides that the 90-day deadline **does not apply to foreign Defendants**:

> This Rule 4(i) does not apply to service in a foreign country pursuant to Rule 4.2(i), (j), (k) and (l).

Rule 4(i), <u>Ariz.R.Civ.P.</u>

The applicable rules for serving a foreign corporation are Rules 4.2(k) and 4.2(i), <u>Ariz.R.Civ.P.</u>  Neither rule sets a deadline for serving a foreign Defendant.

Being that there is no deadline to serve a foreign Defendant, Plaintiff in this present action is not subject to a deadline to serve the above-identified foreign Defendant.  However, Plaintiff prefers to move forward quickly with this present lawsuit and keep the Court informed.  Accordingly, this present Motion (while technically unnecessary) is being filed out of an abundance of caution to anticipatively avoid any confusion in the record and to anticipatively avoid the inadvertent "administrative" or "involuntary" dismissal of the foreign Defendant by the Court, the Clerk of the Court, or the Court Administration.

With these principles in mind, Plaintiff intends on making the necessary arrangements, if necessary[1] to proceed in serving the foreign Defendant under the provisions of the Hague Service Convention.  As the Court knows, service under the Hague Service Convention is very expensive and time-consuming.  The Complaint must be translated into the Chinese language.  Moreover, accompanying documents such as the Summons, Rule 102a Fastar Certificate, etc. must also be translated into Chinese.  Thereafter, a process serving company that specializes in foreign service must make the necessary arrangements to have the foreign Defendant served in China.  Plaintiff reasonably anticipates that this process will take at least nine (9) months (270 days), if not longer, to complete.

---

[1] Plaintiff's counsel will also seek acceptance and waiver of service from counsel for Defendant Harbor Freight if there is joint representation.

Given the foregoing circumstances, Plaintiff respectfully submits that good cause exists for an Order granting Plaintiff a period of two-hundred seventy (270) days from the date of the Order to complete service of the foreign Defendant.  A proposed form of Order is lodged herewith.

**WHEREFORE**, Plaintiff respectfully requests an Order granting Plaintiff a period of two-hundred seventy (270) days from the date of the Order to complete service upon Defendant YUMING INTERNATIONAL, LTD.

**DATED** this 29th day of November, 2022.

**BREWERWOOD, PLLC**


By ___/s/ Dane L. Wood_____
          John B. Brewer
          Dane L. Wood
          2398 E. Camelback Rd., Ste. 540
          Phoenix, AZ 85016
          *Attorneys for Plaintiff*

**ORIGINAL** filed and copy electronically
delivered* this same date to:

The Honorable Casey F. McGinley*
Pima County Superior Court
110 W. Congress St.
Tucson, AZ  85701


 /s/ Marci L. Turner_____

#54075

4

FILED
GARY L. HARRISON
CLERK, SUPERIOR COURT
11/29/2022 4:22:54 PM
CASE C20223728

**BREWERWOOD, PLLC**
2398 East Camelback Road, Suite 540
Phoenix, Arizona 85016
(602) 254-9813; Fax: (602) 254-5511 Facsimile
John B. Brewer, #018207, John@brewerwood.com
Dane L. Wood, #016098, Dane@brewerwood.com
*Attorneys for Plaintiff*

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| NICHOLAS LAGUNA, an unmarried man, <br><br> Plaintiff, <br><br> v. <br><br> HARBOR FREIGHT TOOLS USA, INC., a Delaware corporation; YUMING INTERNATIONAL, LTD., a Chinese corporation; DOES I through X; ABC PARTNERSHIPS I through X, and; BLACK CORPORATIONS I through X, <br><br> Defendants. | Case No.: C20223728 <br><br> **ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION FOR ORDER ENLARGING TIME WITHIN WHICH TO SECURE SERVICE OF PROCESS UPON FOREIGN DEFENDANT** <br><br> (AS MODIFIED BY THE COURT) <br><br> (Assigned to The Honorable Casey F. McGinley) |

The Court having considered Plaintiff's *Ex Parte* Motion for Order Enlarging Time Within Which to Secure Service of Process Upon Foreign Defendant and good cause appearing,

**IT IS HEREBY ORDERED** that Plaintiff shall have a period of two-hundred seventy (270) days from the ~~date of this Order~~ **filing of the Complaint** to complete service upon foreign Defendant YUMING INTERNATIONAL, LTD.

DATED this 29th day of November, 2022.

/s/
**HON. CASEY F. MCGINLEY**
(ID: 751758d6-c7b9-46a5-b5bb-f4c974b35409)

COURT NOTICE; THE ORIGINAL FILER MUST SERVE A COPY OF THIS ORDER
ON ALL PARTIES HAVING APPEARED IN THIS CASE.

#54076

1

# EXHIBIT F

1

**Rusing Lopez & Lizardi, P.L.L.C.**
6363 North Swan Road, Suite 151
2
Tucson, Arizona 85718
Telephone: (520) 792-4800
3
Facsimile: (520) 529-4262
pwaterkotte@rllaz.com
4
avalentine@rllaz.com

5
Patricia V. Waterkotte
State Bar No. 029231
6
Alexander P. Valentine
State Bar No. 034902
7
*Attorneys for Defendant Harbor Freight Tools USA, Inc.*

8
### IN THE UNITED STATES DISTRICT COURT

9
### FOR THE DISTRICT OF ARIZONA

10

11
NICHOLAS LAGUNA, an unmarried
man,

12
                              Plaintiff,

13
vs.

14
HARBOR FREIGHT TOOLS USA,
INC., a Delaware corporation;
15
YUMING INTERNATIONAL, LTD., a
Chinese corporation; DOES I through
16
X; ABC PARTNERSHIPS I through X,
and; BLACK CORPORATIONS I
17
through X,

18
                              Defendants.

19

NO.

**DEFENDANT HARBOR FREIGHT
TOOLS USA, INC.'S VERIFICATION
OF REMOVAL FILINGS**

(Assigned to )

20
        Pursuant to Local Rule 3.6, undersigned counsel for Defendant Harbor Freight Tools

21
USA, Inc. ("Harbor Freight") verifies that true and complete copies of all pleadings and other

22
documents filed in the state court action, Pima County Superior Court, No. C20223728, were

23
filed as Exhibits C, D and E to Harbor Freight's Notice of Removal.

DATED  this 19th day of  December, 2022.

RUSING LOPEZ & LIZARDI, P.L.L.C.

*/s/ Patricia V. Waterkotte*
Patricia V. Waterkotte
Alexander P. Valentine
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 19th day of December, 2022 via Notice of Electronic Filing, generated and transmitted by the ECF system of the District of Arizona, to the following CM/ECF registrants:

**BREWERWOOD, P.L.L.C.**
John B. Brewer
Dane L. Wood
2398 East Camelback Road, suite 540
Phoenix, AZ 85016
John@brewerwood.com
Dane@brewerwood.com
*Attorneys for Plaintiff*

By: */s/ Joan Harris*

# EXHIBIT G

1

**Rusing Lopez & Lizardi, P.L.L.C.**
6363 North Swan Road, Suite 151

2

Tucson, Arizona 85718
Telephone: (520) 792-4800

3

Facsimile: (520) 529-4262
pwaterkotte@rllaz.com

4

avalentine@rllaz.com

5

Patricia V. Waterkotte
State Bar No. 029231

6

Alexander P. Valentine
State Bar No. 034902

7

8

*Attorneys for Defendant Harbor Freight Tools USA, Inc.*

9

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF PIMA**

10

11

Nicholas Laguna, an unmarried man,

No. C20223728

12

Plaintiff,

**NOTICE OF REMOVAL**

13

vs.

14

Harbor Freight Tools USA, Inc., a
Delaware corporation; Yuming

15

International, Ltd., a Chinese
corporation; Does I through X; ABC

16

PARTNERSHIPS I through X, and;
BLACK CORPORATIONS I through

17

X,

18

Defendants.

19

20

      Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight") hereby provides notice

21

that it has removed this action from this Court to the United States District Court for the

22

District of Arizona, Tucson Division, pursuant to 28 U.S.C. §§ 1332, 1441, 1446.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        A copy of the Notice of Removal filed in the United States District Court for the

District of Arizona (without exhibits) is attached hereto as **Exhibit A**. Upon filing the

attached  Notice  of Removal in the District Court, in accordance with 28 U.S.C. § 1446(d),

the removal is effective and this Court shall proceed no further unless and until this case is

remanded by order of the United States District Court.

        WHEREFORE, Defendant Harbor Freight removes this action to District Court.

        DATED  this date 19th of  December, 2022

                                RUSING LOPEZ & LIZARDI, P.L.L.C.

                                _/s/ Patricia V. Waterkotte_
                                    Patricia V. Waterkotte
                                    Alexander P. Valentine
                                    _Attorneys for Defendant_

The foregoing was e-filed this 19th day
Of December, 2022 and a copy served
via AZTurboCourt this same date to:

**BREWERWOOD, P.L.L.C.**
John B. Brewer
Dane L. Wood
2398 East Camelback Road, suite 540
Phoenix, AZ 85016
_Attorneys for Plaintiff_

By: _/s/ Joan Harris_

2